## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

Lynn Culver d/b/a Noah Feline
Conservation Center, 141 Polk 664
Mena, AR 71953
individually and on behalf of all others
similarly situated,

                Plaintiff,

    vs.

Air Canada, Atlas Air Worldwide Holdings,
Inc., Polar Air Cargo, Inc., AMR Corp.,
American Airlines, Inc., Asiana Airlines Inc.,
Air France-KLM, British Airways, PLC,
Cargolux Airlines International SA, Cathay
Pacific Airways
Limited, KLM Royal Dutch Airlines, Japan
Airlines Co., Deutsche Lufthansa AG,
All Nippon Airways Co., Ltd., and Nippon
Cargo Airlines Co., Ltd., SAS AB, SAS
Cargo Group A/S, Korean Air Lines Co. Ltd,
LAN Airlines, SA, (f/k/a LAN Chile S.A.),
Singapore Airlines, Ltd., UAL Corp., and
United Airlines,

                Defendants.

CIVIL ACTION NO. _____

**CLASS ACTION
COMPLAINT**

**JURY DEMAND**

      Plaintiff , individually and on behalf of a Class of all those similarly situated,

brings this action for damages and injunctive relief under the antitrust laws of the United

States against Defendants, demanding a trial by jury, and complaining and alleging as

follows:

## NATURE OF THE CASE

      1.     This lawsuit is brought as a class action on behalf of all individuals and

entities who purchased air cargo services in the United States directly from Defendants,

their predecessors or their controlled subsidiaries and affiliates from at least January 2000 through the present (the "Class Period").  Plaintiff alleges that during the Class Period, the Defendants conspired to fix, raise, maintain or stabilize prices of air cargo services sold in the United States and worldwide.

2.    Since 2000, Defendants have coordinated price increases through the use of surcharges.  For example, Defendants used the aftermath of the 9/11 attacks in New York City as a pretext for coordinated price increases, in the form of surcharges for additional security measures.  Defendants also imposed coordinated surcharges for war-risk insurance premiums applied in conjunction with the outbreak of war in Iraq, and surcharges related to the increase in the price of fuel.

3.    Because of Defendants' unlawful conduct, Plaintiff and other Class members paid artificially inflated prices for air cargo services and, as a result, have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

4.    This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C.  §§15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

5.    This action is also instituted to secure injunctive relief against Defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

6.    Jurisdiction is conferred upon this Court by 28 U.S. C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15(a) and 26.

7.    Venue is found in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§15, 22 and 26 and 28 U.S.C. §1391(b), (c) and (d).  Venue is proper in this judicial district because during the Class Period one or more of the Defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out in, this district.

8.    Upon information and belief, Defendants maintain offices, have agents, transact business, or are found within this judicial district.

9.    This Court has in *personam* jurisdiction over each of the Defendants because, *inter alia*, each Defendant: (a) transacted business in the United States; (b) directly or indirectly sold, and delivered substantial quantities of air cargo services throughout the United States; (c) had substantial aggregate contacts with the United States as a whole; and/or (d) was engaged in an illegal price-fixing conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business throughout the United States, including in this district. Further jurisdictional facts as to certain foreign Defendants are alleged below.

## DEFINITIONS

10.    As used herein, the term:

a.    "Air cargo" means freight for carriage by air.

b.    "Person" means any individual, partnership, corporation, association or other business or legal entity; and

c.    "Class Period" refers to the period from at least January 1, 2000, through the present.

## PLAINTIFF

11.    Plaintiff Lynn Culver d/b/a Noah Feline Conservation Center ("Plaintiff" or "Noah") is a business located in Mena, Arkansas which sells and cares for exotic animals. Plaintiff purchased air cargo services directly from one or more of the Defendants during the Class Period.  The prices that Plaintiff paid to Defendants or their co-conspirators for air cargo services were greater than they would have been absent the conspiracy herein alleged. As a result of the alleged conspiracy, Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.  Plaintiff asserts a claim on behalf of itself and all direct purchasers of air cargo services from one or more of the Defendants during the Class Period.

## DEFENDANTS

12.    Defendant Air Canada is a Canadian corporation with its principal place of business at Air Canada Centre 1235, P.O. Box 14,000, Dorval Quebec, Canada H4Y 1H4.  During the Class Period, Air Canada either directly or through its predecessors, successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the

United States  and in this district.  Plaintiff's claims arise out of Air Canada's contacts

with this district, and Air Canada knew, or had good  reason to know, that its conduct

would have injurious effects in this district.

13.     Defendant AMR Corp. is a corporation organized and existing under the

laws of the State of Delaware with its principal place of business located at 4333 Amon

Carter Boulevard, Fort Worth, Texas.  During the Class Period, AMR, either directly or

through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold

air cargo services in the United States  and in this district.  Plaintiff's claims arise out of

AMR's contacts with this district, and AMR knew, or had good  reason to know, that its

conduct would have injurious effects in this district.

14.     Defendant American Airlines, Inc. is a corporation organized and existing

under the laws of the State of Delaware with its principal business address located at P.O.

Box 619616 MD 5656, DFW Airport, Texas.  American Airlines, Inc. is also one of the

largest scheduled air freight carriers in the world, providing a wide range of freight and

mail services to shippers throughout its system.  American Airlines, Inc. has been served

with a subpoena related to price fixing in the air cargo industry.  During the Class Period,

American Airlines, Inc., either directly or through its predecessors,  successors, and/or

affiliates, distributed, marketed and/or sold air cargo services in the United States  and in

this district.  Plaintiff's claims arise out of American Airlines, Inc. contacts with this

district, and American Airlines, Inc. knew, or had good  reason to know, that its conduct

would have injurious effects in this district.  AMR and American Airlines, Inc. are

collectively referred to as "American Airlines."

15.    Defendant Atlas Air Worldwide Holdings, Inc., ("Atlas Air") is a Delaware corporation with its principal place of business at 2000 Westchester Ave., Purchase, NY 10577.  Atlas Air is the parent corporation of Defendant Polar Air Cargo.  During the Class Period, Atlas Air, either directly or through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States  and in this district.  Plaintiff's claims arise out of Atlas Air's contacts with this district, and Atlas Air knew, or had good  reason to know, that its conduct would have injurious effects in this district.

16.    Defendant Polar Air Cargo, Inc. ("Polar Air") is a subsidiary of Defendant Atlas Air, with its principal place of business at 2000 Westchester Ave., Purchase, NY 10577.  Polar Air is a unit of Defendant Atlas Air.  During the Class Period, Polar Air, either directly or through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States  and in this district. Plaintiff's claims arise out of Polar Air's contacts with this district, and Polar Air knew, or had good  reason to know, that its conduct would have injurious effects in this district.

17.    Defendant Asiana Airlines Inc, ("Asiana") is a Korean corporation with its principal place of business at Asiana Town Kangseo, PO Box 98#47, Osae-Dong, Kangseo-KuSeoul, Korea.  During the Class Period, Asiana, either directly or through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States  and in this district.  Asiana's offices were raided by the Korean Fair Trade Commission.  Plaintiff's claims arise out of Asiana's contacts with this district, and Asiana knew, or had good  reason to know, that its conduct would have

injurious effects in this district.

18.     Defendant Air France-KLM, is a French corporation with its principal place of business at 45, rue de Paris, 95747 Roissy - Charles de Gaulle - France.  Air France Cargo is a subsidiary of Air France.  Air France-KLM and Air France Cargo are collectively referred to as  "Air France). Air France Cargo ranks fifth among cargo airlines, according to its website.  Air France merged with Defendant KLM in May, 2004. In October, 2005, KLM Cargo and Air France Cargo integrated their commercial activities and started the coordination of their operational systems and activities.  During the Class Period, Air France either directly or through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States and in this district.  Air France's offices were raided by the European Commission and by the Federal Bureau of Investigation ("FBI").  Plaintiff's claims arise out of Air France's contacts with this district, and Air France knew, or had good  reason to know, that its conduct would have injurious effects in this district.

19.     Defendant British Airways, PLC ("BA") is a British corporation with its principal place of business at Waterside, PO Box 365, Harmondsworth UB7 0GB. According to its website, British Airways is "one of the top 10 leading cargo airlines in the world."  During the Class Period, British Airways either directly or through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States  and in this district. British Airways' Heathrow offices were raided by the European Commission, and its New York offices were raided by the Department of Justice. Plaintiff's claims arise out of British Airways' contacts with this

district, and British Airways knew, or had good reason to know, that its conduct would have injurious effects in this district.

20.     Defendant Cargolux Airlines International SA ("Cargolux") is a Luxembourg corporation with its principal place of business at Luxembourg Airport, L-2990 Luxembourg, Grand-Duchy of Luxembourg.  During the Class Period, Cargolux either directly or through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States  and in this district. Cargolux's offices were raided by the European Commission.  Plaintiff's claims arise out of Cargolux's contacts with this district, and Cargolux knew, or had good reason to know, that its conduct would have injurious effects in this district.

21.     Defendant Cathay Pacific Airways, Limited ("Cathay Pacific") is a Hong Kong corporation with its principal place of business at Cathay Pacific City, 8 Scenic Road, Hong Kong International Airport, Lantau, Hong Kong.   Cathay Pacific claims to be the worlds' sixth largest air cargo carrier. During the Class Period, Cathay Pacific either directly or through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States  and in this district.  Cathay Pacific's United States offices were raided by the Department of Justice.  Plaintiff's claims arise out of Cathay Pacific's contacts with this district, and Cathay Pacific knew, or had good reason to know, that its conduct would have injurious effects in this district.

22.     Defendant KLM Royal Dutch Airlines was a Dutch corporation with its principal place of business at 1117 ZL Schiphol Airport, The Netherlands.  KLM Cargo is a subsidiary of KLM.  KLM Royal Dutch Airlines and KLM Cargo are collectively

referred to as "KLM."  KLM merged with Defendant Air France in May, 2004.  In

October, 2005, KLM Cargo and Air France Cargo integrated their commercial activities

and started the coordination of their operational systems and activities.  KLM's offices

were raided by the European competition authorities and the FBI.  During the Class

Period, KLM either directly or through its predecessors,  successors, and/or affiliates,

distributed, marketed and/or sold air cargo services in the United States  and in this

district.  Plaintiff's claims arise out of KLM's contacts with this district, and KLM knew,

or had good  reason to know, that its conduct would have injurious effects in this district.

23.     Defendant Japan Airlines International Company, Ltd.("JAL") is a Japanese

corporation with its principal place of business at 4-11, Higashi-shinagawa 2-chome,

Shinagawa-ku, Tokyo 140-8605, Japan.  JAL is a member of WOW, a global alliance of

four of the largest air cargo carriers.  During the Class Period, JAL either directly or

through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold

air cargo services in the United States  and in this district.  JAL's New York offices were

raided by the Department of Justice, and its Frankfurt offices were searched by the

European antitrust authorities.  Plaintiff's claims arise out of JAL's contacts with this

district, and JAL  knew, or had good  reason to know, that its conduct would have

injurious effects in this district.

24.     Defendant Deutsche Lufthansa AG ("Lufthansa") is a German corporation

with its principal place of business at Lufthansa Base, 60546 Frankfurt/Main.  Lufthansa

Cargo is a wholly-owned subsidiary of Lufthansa.  Deutsche Lufthansa AG and

Lufthansa Cargo are collectively referred to as "Lufthansa."  Lufthansa is the second

largest cargo airline during the Class Period.  Lufthansa is a founding member of WOW,

a global alliance of four of the largest air cargo carriers.  During the Class Period,

Lufthansa either directly or through its predecessors,  successors, and/or affiliates,

distributed, marketed and/or sold air cargo services in the United States  and in this

district.  Lufthansa's offices were raided by the European Commission.  Plaintiff's claims

arise out of Lufthansa's contacts with this district, and Lufthansa knew, or had good

reason to know, that its conduct would have injurious effects in this district.

     25.     Defendant All Nippon Airways Co., Ltd.  ("ANA") is a Japanese

corporation with its principal place of business at Shidome City Center 1-5-2, Higashi-

Shinbashi, Minato-ku, Tokyo 105-7133, Japan.  During the Class Period, ANA, either

directly or through its predecessors,  successors, and/or affiliates, distributed, marketed

and/or sold air cargo services in the United States  and in this district.  Plaintiff's claims

arise out of ANA's contacts with this district, and ANA knew, or had good  reason to

know, that its conduct would have injurious effects in this district.

     26.     Defendant Nippon Cargo Airlines Co., Ltd.  ("NCA") is a Japanese

corporation with its principal place of business at Shidome City Center 8F 5-2, Higashi-

Shinbashi, 1-Chome, Minato-ku, Tokyo 105-7108, Japan.  During the Class Period, NCA,

either directly or through its predecessors,  successors, and/or affiliates, distributed,

marketed and/or sold air cargo services in the United States  and in this district.  NCA

confirmed that it had been served at John F. Kennedy International Airport with papers

from the United States District Court, District of Columbia, requiring NCA to appear at

the Court in April.  Plaintiff's claims arise out of NCA's contacts with this district, and

NCA knew, or had good reason to know, that its conduct would have injurious effects in this district.

27.    Defendant SAS AB is a Swedish corporation with its principal place of business at Frösundaviks Allé 1, Stockholm.  SAS AB has confirmed that it was raided by competition authorities investigating price-fixing in the air cargo industry.  During the Class Period, SAS AB either directly or through its predecessors, successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States  and in this district.  Plaintiff's claims arise out of SAS AB's contacts with this district, and SAS knew, or had good reason to know, that its conduct would have injurious effects in this district.

28.    Defendant SAS Cargo Group A/S was established in June, 2001 as an independent company within SAS AB.  SAS Cargo Group A/S is a Swedish corporation with its principal place of business at Frösundaviks Allé 1, Stockholm..  SAS AB and SAS Cargo Group A/S are collectively referred to as "SAS."  SAS is a founding member of WOW, a global alliance of four of the largest air cargo carriers.  During the Class Period, SAS Cargo Group A/S either directly or through its predecessors, successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States and in this district.  Plaintiff's claims arise out of SAS Cargo Group A/S contacts with this district, and SAS Cargo Group A/S knew, or had good reason to know, that its conduct would have injurious effects in this district.

29.    Defendant Korean Air Lines Co., Ltd. ("Korean Air") is a Korean corporation with its principal place of business at KAL Building, 1370, Gonghang-dong,

Gangseo-gu, Seoul, Korea.  According to its website, Korean Air was the largest air cargo supplier in 2004.  During the Class Period, Korean Air either directly or through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States  and in this district.  Korean Air's offices were raided by the Korean Fair Trade Commission.  Plaintiff's claims arise out of Korean Air's contacts with this district, and Korean Air knew, or had good  reason to know, that its conduct would have injurious effects in this district.

30.    Defendant LAN Airlines, SA (f/k/a LAN Chile S.A.) is a Chilean corporation with its principal place of business at Avenida Americo Vespucio, Sur No. 901, Renca, Santiago, Chile.  LAN Cargo S.A. is a wholly owned subsidiary of LAN Airlines.  LAN Airlines, SA and LAN Cargo S.A. are collectively referred to as "LAN Airlines."  During the Class Period, LAN Airlines either directly or through its predecessors,  successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States and in this district.  LAN Cargo's headquarters in Miami were raided by the United States Department of Justice.  Plaintiff's claims arise out of LAN Airlines' contacts with this district, and LAN Airlines knew, or had good  reason to know, that its conduct would have injurious effects in this district.

31.    Defendant Singapore Airlines, Ltd., is a Singapore corporation with its principal place of business at Airline House, 25 Airline Road, Singapore 819829. Singapore Airlines Cargo was formed on July 1, 2001 as a wholly owned, independently managed subsidiary of Singapore Airlines.  Singapore Airlines, Ltd. and Singapore Airlines Cargo are collectively referred to as "Singapore Airlines."  According to its

website, Singapore Airlines is the third largest cargo airline. Singapore Airlines is a founding member of WOW, a global alliance of four of the largest air cargo carriers. During the Class Period, Singapore Airlines either directly or through its predecessors, successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States and in this district. Plaintiff's claims arise out of Singapore Airlines' contacts with this district, and Singapore Airlines knew, or had good reason to know, that its conduct would have injurious effects in this district.

32.    Defendant UAL Corp. ("UAL"), the parent corporation of Defendant United Airlines, is a Delaware corporation with its principal place of business at 1200 E. Algonquin Rd., Elk Grove Township, IL 60007.    During the Class Period, UAL either directly or through its predecessors, successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States and in this district.

33.    Defendant United Airlines is a subsidiary of Defendant UAL with its principal place of business at 1200 E. Algonquin Rd., Elk Grove Township, IL 60007. United Airlines' cargo office in Frankfurt, Germany, was raided by the European antitrust authorities. During the Class Period, United Airlines either directly or through its predecessors, successors, and/or affiliates, distributed, marketed and/or sold air cargo services in the United States and in this district.

34.    Defendants Air Canada, Atlas Air, Polar Air, AMR Corp., American Airlines, Inc., Asiana, Air France-KLM, British Airways, Cargolux, Cathay Pacific, KLM, JAL, Lufthansa, All Nippon Airways Co., Ltd., Nippon Cargo Airlines Co., Ltd., SAS AB, SAS Cargo Group, Korean Air, LAN Airlines, SA (f/k/a Lan Chile S.A.),

Singapore Airlines, UAL and United Airlines are sometimes referred to hereinafter as the "Defendants."

35.    Whenever this Complaint makes reference to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

## CO-CONSPIRATORS

36.    Various other persons, firms and corporations, not named as Defendants in this Complaint, have participated as co-conspirators with Defendants in the violations alleged herein, and have aided, abetted and performed acts and made statements in furtherance of the conspiracy.

## INTERSTATE AND FOREIGN TRADE AND COMMERCE

37.    Plaintiff incorporates by reference as if fully set forth herein, the allegations contained in this Complaint.

38.    The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate and international commerce.

39.    During the time period covered by this Complaint, Defendants and their co-conspirators sold and distributed air cargo services to and throughout the United States.

40.    Each of the Defendants and their co-conspirators used instrumentalities of

interstate and/or foreign commerce to sell and market air cargo services.

41.    Defendants and their co-conspirators manufactured, sold and shipped substantial quantities of air cargo services in a continuous and uninterrupted flow of interstate and foreign commerce to customers located in states and nations other than the states and nations in which Defendants were located.

## FACTS

42.    Defendants are the major providers of air cargo services.

43.     Air cargo services are used by Plaintiff and Class Members as a means to transport freight over long distances.  Air cargo is typically the fastest means of carriage for freight.

44.    The air cargo services industry has a number of structural and other characteristics that facilitate the implementation and maintenance of a horizontal price-fixing such as that alleged by Plaintiff herein, specifically:

    a.    Air cargo services are a commodity product that are fungible in the sense that air cargo services provided by any Defendant are readily substitutable for the air cargo services provided by any other Defendant.  Air cargo services are highly homogenous services sold by Defendants and purchased by Plaintiff and members of the Class primarily on the basis of price.

    b.    The air cargo service industry in the United States is highly concentrated, facilitating coordination of air cargo prices among the major providers thereof.  During the Class Period, Defendants accounted for virtually all air cargo services in the United States.

c.      There are substantial barriers to entry in the air cargo services

industry.  Entry into the industry requires a substantial initial investment and a

significant period of time.  Viable entry requires the purchase or lease of a

substantial number of airplanes.  Similarly, viable entry requires that a new

provider capture a significant market share from existing providers.  Thus, entry is

both expensive and risky. Air cargo services are a multi-billion dollar annual

industry.

45.     Since 2000, Defendants have coordinated price increases through the use of

surcharges.  For example, Defendants used the aftermath of the 9/11 attacks in New York

City as a pretext for coordinated price increases, in the form of surcharges for additional

security measures.  Defendants also imposed coordinated surcharges for war-risk

insurance premiums applied in conjunction with the outbreak of war in Iraq, and

surcharges related to the increase in the price of fuel.

46.     As a result of this conspiracy, Plaintiff and members of the Class were

injured because they paid more for air cargo services than they would have in a

competitive and free market.

47.     Defendants also formed alliances which facilitated the transfer of relevant

information.  For example, in March, 1999, three of the largest Defendants – Lufthansa,

Singapore Airlines and SAS– began discussing a global alliance of air cargo service

providers now known as WOW.   The press release touted the Defendants' desire for

"closer co-operation in the air cargo business."   Pursuant to the memorandum of

understanding among the Defendants, the members would explore "prospects for wide-

ranging integration of network management, marketing and sales, production

harmonisation and a common infrastructure for information technology."

48.    In October 2001, the members of WOW harmonized their express services

so that the services would function as a single product.

49.    In April 2002, the WOW members officially created the WOW alliance,

and harmonized their standard cargo products.

50.    In July, 2002, JAL joined WOW as the fourth member.

## GOVERNMENTAL INVESTIGATION

51.    Beginning February 14, 2006, the European Commission, the Competition

Bureau of Canada, the Korean Fair Trade Commission, and the United States Department

of Justice, along with national competition authorities in the European Union, conducted

coordinated raids of Defendants' corporate offices.

## FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING

52.    Plaintiff and other members of the Class had no knowledge of Defendants'

unlawful self-concealing conspiracy and could not have discovered the contract,

combination or conspiracy at an earlier date by the exercise of due diligence because of

the deceptive practices and secrecy techniques employed by Defendants to avoid

detection of, and to fraudulently conceal, their contract, combination or conspiracy.

53.    Because the contract, combination or conspiracy was kept secret by

Defendants, Plaintiff and other members of the Class were unaware that prices of air

cargo services were secretly agreed upon until February 2006, when certain Defendants

disclosed for the first time that they had been raided by the European Commission in relation to their pricing and marketing of air cargo services. Before then, Defendants represented publicly, both to customers and otherwise, that their pricing activities relating to air cargo services were unilateral, rather than collusive, and based upon legitimate factors, such as increased costs and other free market considerations. In making those false representations, Defendants misled Plaintiff and members of the Class as to the true, collusive and coordinated nature of their pricing and other illegal and anti-competitive activities. While Plaintiff diligently sought to protect itself from unlawful activity, Plaintiff and other members of the Class were unable, until February 2006, to detect the above-described secret activity, which by its nature was self-concealing.

54.    As a result of Defendants' fraudulent concealment of their conspiracy, the applicable statute of limitations governing Plaintiff's right of action has been tolled.

## **EFFECTS**

55.    The unlawful contract, combination or conspiracy alleged above had, *inter alia*, the following effects:

    a.    Prices charged by Defendants and their co-conspirators to Plaintiff and the members of the Class for air cargo services were maintained, at artificially high and noncompetitive levels; and

    b.    Plaintiff and members of the Class were required to pay more for air cargo services than they would have paid in a competitive marketplace, unfettered by Defendants' and their co-conspirators' collusive and unlawful price-fixing.

56.    During and throughout the period of the contract, combination or

conspiracy alleged above, Plaintiff and members of the Class directly purchased air cargo services in the United States.

57.    Plaintiff and the other Class members paid more for the air cargo services that they purchased than they would have paid under conditions of free and open competition.

58.    As a direct and proximate result of the illegal combination, contract or conspiracy alleged above, Plaintiff and the members of the Class were injured and financially damaged in their businesses and property, in amounts that are not presently determinable.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60.    Plaintiff brings this action on its own behalf and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons (excluding governmental entities, Defendants, co-conspirators, other providers of air cargo services and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased air cargo services in the United States directly from any of the Defendants or their co-conspirators, or any present or former parent, subsidiary or affiliate thereof, at any time during the period from at least January 2000 through the present.

Plaintiff believes that there are thousands of Class members as above described, the exact number and identities being known only by Defendants.

61.     The Class is so numerous and geographically dispersed that joinder of all members is impracticable.

62.     There are questions of law and fact common to the Class.  These common questions relate to the existence of the conspiracy alleged, and to the type and common pattern of injury sustained as a result thereof.  The questions include but are not limited to:

a.     Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices of air cargo services sold in the United States;

b.     The identity of the participants in the conspiracy;

c.     The duration of the conspiracy alleged in this Complaint and the nature and  character of the acts performed by Defendants and their co-conspirators in furtherance of the  conspiracy;

d.     Whether the alleged conspiracy violated Section 1 of the Sherman Act:

e.     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

f.     The effect of Defendants' conspiracy on the prices of air cargo services sold if, the  United States during the Class Period; and

g.     The appropriate measure of damages sustained by Plaintiff and other members of the Class.

63.    Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of  other Class members, and Plaintiff will fairly and adequately protect the interests of the  members of the Class.  Plaintiff is a direct purchaser of air cargo services from one or more of the Defendants.  Plaintiff's interests are aligned with, and not antagonistic to, those of the other  members of the Class.  In addition, Plaintiff is represented by competent counsel experienced in  the prosecution of antitrust and class action litigation.

64.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

65.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

66.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

67.    A class action is superior to other available methods for the fair and efficient  adjudication of this controversy.  The Class is readily definable and is one for which records exist  in the files of Defendants and their co-conspirators.  Prosecution as a class action will eliminate the  possibility of repetitious litigation.  Treatment as a class action will permit a large number of  similarly situated persons to adjudicate their common claims in a single forum simultaneously,  efficiently and without duplication of

effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## CLAIM FOR RELIEF

### For Violation of 15 U.S.C. §1

68.     Plaintiff realleges and incorporates each and every allegation set forth above as if fully written herein.

69.     From a date unknown, but at least from January 2000, and continuing through the present, Defendants and their co-conspirators have combined, conspired and/or contracted to restrain interstate trade in violation of 15 U.S.C.§1.

70.     In furtherance of the unlawful conspiracy, upon information and belief, each of the defendants and their co-conspirators has committed overt acts including inter alia:

      a.    Agreed to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize prices of Air cargo services sold in the United States;

      b.    Communicating with co-conspirators regarding prices to be charged for Air cargo services;

      c.    Meeting with co-conspirators in order to keep the existence of the conspiracy unknown so as to foster the illegal anti-competitive conducted described herein;

      d.     Refraining from competition by refusing to offer Air cargo services at prices below the agreed-upon fixed price; and

      e.     Selling Air cargo services at agreed-upon prices.

71.    Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, raise and/or stabilize prices of Air cargo services.

72.    Defendants' anti-competitive agreement was implemented by, *inter alia*, a series of coordinated price increase announcements, largely in the form of surcharges, that began in 2000. These coordinated price increases continued on a regular basis through the present, with the actual and intended result that Plaintiff and members of the Class paid supra-competitive prices for Air cargo services. Defendants falsely attributed these price increases to increases in input costs such as security and energy. As a direct and proximate result of the air cargo services price-fixing conspiracy, Defendants have restrained competition in the air cargo services market sale and injured plaintiff and each Class member in their business and property in that they have each paid a higher price for air cargo services than they would have paid absent the concerted unlawful activity.

73.    The conspiracy among Defendants is international in nature and scope. On their websites, many Defendants tout the global nature of their business and activities. The global air cargo services market is dominated by a small number of companies. Defendants viewed and treated the air cargo services market as a global market and, in fact, prices charged for air cargo services in the European Union affected prices in the United States, and vice versa. Defendants needed to, and did, collude in both regions in

order to effectively collude in either region.

74.    The conduct of Defendants and their co-conspirators constitutes a per se violation of §1 of the Sherman Act 15 U.S.C. §1.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that:

A.    The Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

B.    The contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U. S.C. § 1.

C.    Judgment be entered for Plaintiff and members of the Class against Defendants for three times the amount of damages sustained by Plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

D.    Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

(1)    Continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

(2)    Communicating or causing to be communicated to any other person engaged in the manufacture, distribution or sale of any product except to the extent necessary in connection with a bona fide sales transactions between the parties to such communications.

E.    Plaintiff and members of the Class have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

Dated:  March 8, 2006

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**

_/s/ Paul T. Gallagher_____
Michael D. Hausfeld  D.C. Bar 153742
Paul T. Gallagher  D.C. Bar 439701
Andrew B. Bullion
Suite 500, West Tower
1100 New York Avenue, N.W.
Washington, DC  20005
Tel:  (202)408-4600
Fax:  (202)408-4699

CHESTNUT & CAMBRONNE, P.A.
Karl L. Cambronne #14321
Brian N. Toder #17869X
Jeffrey D. Bores #227699
3700 Campbell Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402
Tel:  (612) 339-7300
Fax: (612)336-2940

_Attorneys for Plaintiff Lynn Culver d/b/a Noah Feline Conservation Center_